IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

———————————————

THE STATE OF ARIZONA,
*Appellee*,

*v.*

CRISPIN GRANADOS,
*Appellant*.

No. 2 CA-CR 2013-0206
Filed August 5, 2014

———————————————

Appeal from the Superior Court in Santa Cruz County
No. CR10209
The Honorable James A. Soto, Judge

**AFFIRMED**

———————————————

COUNSEL

Thomas C. Horne, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Alan L. Amann, Assistant Attorney General, Tucson
*Counsel for Appellee*

Barton & Storts, P.C., Tucson
By Brick P. Storts, III
*Counsel for Appellant*

———————————————

**OPINION**

Judge Howard authored the opinion of the Court, in which Judge
Vásquez and Judge Miller concurred.

H O W A R D, Judge:

¶1	After a jury trial, Crispin Granados was convicted of kidnapping, second-degree burglary, two counts of sexual assault, aggravated assault, and aggravated harassment.  On appeal, he argues the trial court displayed judicial bias and erred in some of its evidentiary rulings.[1]  For the following reasons, we affirm.

## Factual and Procedural Background

¶2	We view the evidence in the light most favorable to upholding the convictions.  *State v. Pena*, 233 Ariz. 112, ¶ 2, 309 P.3d 936, 938 (App. 2013).   In September 2010, P.L., at the time approximately seventy-two years old, went outside to feed her dog.  Granados grabbed her, threw her against the wall several times, and told her that "he was going to suffocate [her] with [his] jacket."  Granados took P.L. inside the house and continued hitting her.  He then took P.L. into her bedroom and sexually assaulted her.

¶3	Granados remained in the house for the next two days; he continually watched P.L. to ensure she did not leave, disconnected her telephones, threatened her, threatened to kidnap her grandchildren and kill her children if she told anyone about him, did not allow her to eat, and allowed her to have only one glass of water.  During that time, Granados continued to physically assault P.L. and sexually assaulted her two more times.

¶4	On the third day, P.L. told Granados she would lift an injunction against harassment she had obtained against him before this incident if he allowed her to go to a previously scheduled doctor's appointment, and Granados agreed.  P.L. met her daughter

---

[1]Granados raises other issues that do not meet the criteria for publication.  *See* Ariz. R. Sup. Ct. 111(b).  We address them in a separate, contemporaneously filed memorandum decision.  *See* Ariz. R. Sup. Ct. 111(h).  Although not directly relevant to the issue discussed here, we provide the facts and procedural background in this opinion to provide context for our discussion.

at the doctor's office, told her what had happened, and they reported it to the police.

**¶5** Granados was charged and convicted as noted above. He was sentenced to aggravated, enhanced, concurrent and consecutive terms of imprisonment totaling twenty years.

## Judicial Bias

**¶6** Granados argues that because the trial court removed him from the courtroom during part of voir dire and sustained objections during his testimony later in the trial, the court infected the trial with an appearance of bias. Granados contends he is entitled to structural error review, which does not require a defendant to object at the trial level. *See State v. Ring*, 204 Ariz. 534, ¶ 46, 65 P.3d 915, 933 (2003); *State v. Valverde*, 220 Ariz. 582, ¶ 10, 208 P.3d 233, 235-36 (2009).

**¶7** Structural error is error so serious that it "'deprive[s] defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence'" and, if found, is prejudicial per se and requires reversal. *Valverde*, 220 Ariz. 582, ¶ 10, 208 P.3d at 235, *quoting Ring*, 204 Ariz. 534, ¶ 45, 65 P.3d at 933 (alterations in *Valverde*). In *Ring*, our supreme court stated that the United States Supreme Court defined "a biased trial judge" as one of the "relatively few instances in which we should regard error as structural." 204 Ariz. 534, ¶ 46, 65 P.3d at 933.

**¶8** In *Ring*, the court cited *Tumey v. Ohio*, 273 U.S. 510, 523 (1927) for the proposition that judicial bias constitutes structural error. *Id.* In *Tumey*, the Supreme Court found that it "violates the Fourteenth Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him." 273 U.S. at 523. However, the Court further stated that "[a]ll questions of judicial qualification may not involve constitutional validity. Thus matters of kinship, personal bias, state policy, remoteness of interest would seem generally to be matters merely of

legislative discretion." *Id.* Rather, it is only bias reflecting a "direct, personal, substantial pecuniary interest," *id.*, that constitutes a "structural defect affecting the framework within which the trial proceeds." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991).

¶9 Similarly, in *Caperton v. A.T. Massey Coal Co.*, the Supreme Court concluded that whether bias rises to the constitutionally impermissible level is grounded in the "maxim that '[n]o man is allowed to be a judge in his own cause; because his interest would certainly bias his judgment, and, not improbably, corrupt his integrity.'" 556 U.S. 868, 876 (2009), *quoting* The Federalist No. 10, at 59 (James Madison) (J. Cooke ed. 1961). To determine whether bias meets the objective standard due process requires, "the Court has asked whether, 'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" *Id.* at 883-84, *quoting Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

¶10 Under that high standard, the Court has found judicial recusal constitutionally required only in "rare instances." *Id.* at 890. For example, when the judge had a "financial interest in the outcome of a case" or "in the criminal contempt context, where a judge had no pecuniary interest in the case but was challenged because of a conflict arising from his participation in an earlier proceeding" that suggested he had a strong interest in the outcome. *Id.* at 876-81. To this short list, the Court added those cases in which "a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent." *Id.* at 884. As the Court pointed out, these types of cases "deal[] with extreme facts that create an unconstitutional probability of bias." *Id.* at 887.

¶11 Therefore, although *Ring* and *Valverde* generically refer to "judicial bias" as structural error, the defendant must allege a type of bias that would implicate his due process rights, such as bias based on a "direct, personal, substantial pecuniary interest," in order to constitute such error. *Tumey*, 273 U.S. at 523; *Fulminante*, 499 U.S.

at 309-10; *see also Caperton*, 556 U.S. at 876-77. Other types of bias, such as "[p]ersonal bias or prejudice, . . . 'would not be [a] sufficient basis for imposing a constitutional requirement under the Due Process Clause'" and thus do not require structural error review. *Caperton*, 556 U.S. at 877, *quoting Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820 (1986).

**¶12** Here, Granados's allegations of bias are based solely on the trial judge's rulings and admonishments to him regarding his behavior in the courtroom. He does not allege bias or the objective potential for bias based on the judge's "direct, personal, substantial pecuniary interest" or other strong personal interest in the outcome of the case. *See Tumey*, 273 U.S. at 523. Accordingly, Granados is not entitled to structural error review. *See Valverde*, 220 Ariz. 582, ¶ 10, 208 P.3d at 235-36; *Caperton*, 556 U.S. at 876-81.

**¶13** As we have noted above, states are allowed to impose more rigorous standards for judicial recusal than that required by due process. *Caperton*, 556 U.S. at 889-90. "[M]atters of kinship, personal bias, state policy, remoteness of interest," for example, are ordinarily within the purview of the state. *Tumey*, 273 U.S. at 523. In Arizona, defendants are "entitled to a change of judge if a fair and impartial hearing or trial cannot be had by reason of the interest or prejudice of the assigned judge." Ariz. R. Crim. P. 10.1(a). If a defendant fails to object on the basis of a trial judge's bias below by filing a motion and affidavit pursuant to Rule 10.1, he forfeits review for all but fundamental, prejudicial error. *State v. Curry*, 187 Ariz. 623, 631, 931 P.2d 1133, 1141 (App. 1996); *Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607. Thus, because Granados is alleging the appearance of bias based on judicial rulings, and not bias based on constitutionally impermissible grounds, he has forfeited the argument for all but fundamental, prejudicial error because he failed to file a motion pursuant to Rule 10.1 below. *See Curry*, 187 Ariz. at 631, 931 P.2d at 1141.

**¶14** "'A trial judge is presumed to be free of bias and prejudice.'" *State v. Ramsey*, 211 Ariz. 529, ¶ 38, 124 P.3d 756, 768 (App. 2005), *quoting State v. Hurley*, 197 Ariz. 400, ¶ 24, 4 P.3d 455, 459 (App. 2000). "Bias and prejudice means a hostile feeling or spirit of ill-will, or undue friendship or favoritism" toward one of the

parties. *State v. Myers*, 117 Ariz. 79, 86, 570 P.2d 1252, 1259 (1977). Judicial bias or prejudice ordinarily must "'arise from an extra-judicial source and not from what the judge has done in his participation in the case.'" *State v. Emanuel*, 159 Ariz. 464, 469, 768 P.2d 196, 201 (App. 1989), *quoting State v. Thompson*, 150 Ariz. 554, 557, 724 P.2d 1223, 1227 (App. 1986). Thus, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also State v. Ellison*, 213 Ariz. 116, ¶ 40, 140 P.3d 899, 912 (2006). And "adverse rulings to which a party assigns no error" cannot demonstrate judicial bias either. *Curry*, 187 Ariz. at 631, 931 P.2d at 1141. Furthermore, we must review such claims in light of the judge's duty to "require order and decorum in proceedings before the court." *See* Ariz. R. Sup. Ct. 81, Canon 2.8(A).

¶15        In this case, Granados claims the trial court gave "the appearance of bias" by not allowing Granados to interrupt court proceedings, removing him from the courtroom during voir dire, and sustaining general objections during Granados's testimony. His arguments are without merit.

¶16        During voir dire, despite repeated admonishments from the judge, Granados continually interrupted the court proceedings. Later that same day, Granados addressed the jury directly, and asked a witness in the presence of the jury, and without any basis, if he was "still having sex with [P.L.]." At the start of the afternoon session, outside the presence of the jury, the trial court granted the state's motion to have Granados removed from the courtroom due to his disruptive behavior. He was allowed to watch and listen to the proceedings from an observation room.

¶17        In light of Granados's repeated interference with court proceedings, the trial judge was acting well within his authority to control the courtroom. *See State v. Bible*, 175 Ariz. 549, 595, 858 P.2d 1152, 1198 (1993); *see also* Ariz. R. Sup. Ct. 81, Canon 2.8(A). Granados has failed to point out any specific comments or actions by the judge that would show "a hostile feeling or spirit of ill-will." *Myers*, 117 Ariz. at 86, 570 P.2d at 1259. Furthermore, the judge's admonitions and order to remove Granados from the courtroom occurred outside the presence of the jury and he therefore has not

established any prejudice arising therefrom. *See Bible*, 175 Ariz. at 595, 858 P.2d at 1198; *see also Hilliard*, 133 Ariz. at 368-69, 651 P.2d at 896-97. Consequently, Granados's reliance upon the court's conduct during jury selection fails to show judicial bias or the appearance of bias. *See Bible*, 175 Ariz. at 595, 858 P.2d at 1198.

¶18 Granados also argues that the trial court's rulings during his testimony "[e]scalat[ed] . . . the appearance of bias by the trial court." Granados generally alleges that the court exhibited bias by "sustaining a myriad of general objections" by the prosecutor during his testimony. He seems to reason that general objections are improper, and therefore ruling on those general objections "had massive impacts upon the fairness of Mr. Granados's trial."

¶19 Objections ordinarily must state the specific grounds upon which they are made, "unless it [is] apparent from the context." Ariz. R. Evid. 103(a)(1)(B). The purpose of the rule requiring that specific grounds of objection be stated is to allow the adverse party to address the objection and to permit the trial court to intelligently rule on the objection and avoid error. *State v. Rutledge*, 205 Ariz. 7, ¶¶ 29-30, 66 P.3d 50, 56 (2003) (specific objection allows "'the trial court to rectify possible error . . . and to enable the opposition to obviate the objection if possible'"), *quoting State v. Hoffman*, 78 Ariz. 319, 325, 279 P.2d 898, 901 (1955); *see also In re Tiffany O.*, 217 Ariz. 370, ¶ 5, 174 P.3d 282, 284 (App. 2007).

¶20 Before Granados took the stand, his attorneys recognized he likely would "spout[] out irrelevant stuff" while testifying. The trial court had to repeatedly admonish Granados to "listen to the question that your attorney asks you carefully and just answer the question. You do not need to add additional information." Despite these admonishments, Granados continually went beyond the scope of the questions asked and gave non-responsive answers.

¶21 Based on Granados's conduct throughout the trial, and his persistent practice of giving non-responsive and beyond the scope answers, the grounds of the prosecutor's objections were clear from their context. *See* Ariz. R. Evid. 103(a)(1)(B). And when Granados's attorneys stated they did not know the ground for the

objection, they were told. Granados has not cited any legal authority or provided any explanation for how a trial court's ruling on properly made objections would create the appearance of judicial bias. *See Liteky*, 510 U.S. at 555; *Ellison*, 213 Ariz. 116, ¶ 40, 140 P.3d at 912. A defendant's own self-prejudicing conduct which precipitates lawful repercussions simply does not create the appearance of bias in the judge. *See Liteky*, 510 U.S. at 555; *Ellison*, 213 Ariz. 116, ¶ 40, 140 P.3d at 912.

**¶22** To the extent Granados argues that the act of sustaining the many objections made during his testimony created the appearance of bias, we similarly reject this assertion. Although the trial judge sustained many of the prosecutor's objections, it overruled many of them as well. The judge was merely exercising his authority and duty to issue rulings on proper objections; rulings which Granados has failed to take issue with on appeal. Accordingly, Granados has failed to show any judicial bias stemming from the judge's rulings on properly made objections, and his argument fails. *See Curry*, 187 Ariz. at 631, 931 P.2d at 1141; *Ellison*, 213 Ariz. 116, ¶ 40, 140 P.3d at 912.

**¶23** Granados further argues that the trial court's sua sponte objections during his testimony gave the appearance of bias. A trial court must "avoid any appearance of partiality . . . [and] refrain from taking any action calculated to influence the jury or likely prejudice the defendant." *Bible*, 175 Ariz. at 595, 858 P.2d at 1198. However, a "trial judge must control the courtroom." *Id.*; Ariz. R. Evid. 103(d) ("[T]he court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means."). The court thus has discretion to ensure that inadmissible testimony and evidence is not presented, "even when the opponent does not object." *Bible*, 175 Ariz. at 595, 858 P.2d at 1198; Ariz. R. Evid. 611. Accordingly, "[w]ithin reason, a judge does not display bias or cause prejudice when acting sua sponte to control the courtroom and the trial." *Bible*, 175 Ariz. at 595, 858 P.2d at 1198.

**¶24** During one instance, the trial judge, who spoke Spanish, cut off the interpreter because he understood Granados was about to testify to inadmissible hearsay. Following Granados's objection to such a procedure, the judge noted he was "sympathetic"

to the concerns of the non-Spanish speaking attorneys and would "try to restrain [himself]," but would continue to exercise his authority to control the testimony given in the case. One of Granados's attorneys spoke Spanish and did not take issue with the judge's characterization of Granados's impending testimony. In fact, Granados conceded below that the court had the "authority to control testimony."

¶25        Although on appeal Granados summarily states that after this instance, "the Court continued and, in fact, the interruptions increased," he does not cite to any portion of the record where the court interrupted the interpreter based on its understanding of Granados's Spanish testimony, nor could we find such an instance. Consequently, Granados has not demonstrated that this single exchange or any of the court's actions demonstrated a "deep-seated . . . antagonism" which would constitute judicial bias. *See Ellison*, 213 Ariz. 116, ¶ 38, 140 P.3d at 912. Our review of the record shows the judge was trying to control the courtroom to ensure the jury received only admissible, relevant testimony.[2] *See Bible*, 175 Ariz. at 595, 858 P.2d at 1198.

¶26        Throughout the rest of Granados's testimony, despite the trial court's repeated admonitions, he continued to go beyond the scope of what was asked by the attorneys and provide non-responsive answers. Again, he has not contended that any of the court's sua sponte rulings were erroneous. Thus, Granados has not demonstrated how the court's sua sponte actions to prevent the jury from hearing inadmissible testimony amounted to a display of bias. *See id.*

¶27        Granados also appears to contend that because the trial judge did not make sua sponte objections during P.L.'s testimony, as

_____

[2]We note that both the trial judge and one of the defense attorneys attempted to prevent Granados from completing an answer, or the interpreter from stating it, because of evidentiary concerns. Unless necessary to prevent a mistrial, or otherwise necessary for the administration of justice, this practice should be used sparingly.

the judge had done during Granados's own testimony, he created a disparity that necessarily showed some bias on the judge's part which prejudiced Granados. But Granados has failed to indicate where the judge should have made, but failed to make, sua sponte objections to P.L.'s testimony and how, during a nine-day trial, the court's lack of objections during one witness's testimony showed a "deep-seated . . . antagonism" toward Granados or undue favoritism towards the state. *See Ellison*, 213 Ariz. 116, ¶ 38, 140 P.3d at 912; *see also State v. Cannon*, 148 Ariz. 72, 76, 713 P.2d 273, 277 (1985) (no requirement that "judges sua sponte . . . rule on issues not raised before them"). This contention, without any further support or explanation, is insufficient to show that the judge was biased. *See Ramsey*, 211 Ariz. 529, ¶ 38, 124 P.3d at 768.

¶28 Additionally, although the trial court did not, sua sponte, make objections during P.L.'s testimony, Granados frequently objected; a strategy which the court specifically protected despite the state's contention that the constant objections were "confusing" and "disruptive." The record does not demonstrate the judge inherently treated P.L. and Granados so differently as to demonstrate "that the trial judge was, in fact, biased." *Ramsey*, 211 Ariz. 529, ¶ 38, 124 P.3d at 768.

¶29 Granados has failed to show any bias on the trial judge's part, let alone a bias amounting to fundamental error. *See Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607; *Curry*, 187 Ariz. at 631, 931 P.2d at 1141. His argument thus fails.

### Hearsay Testimony

¶30 Granados next argues the trial court erred by admitting hearsay testimony. "We review a trial court's ruling on the admissibility of evidence for an abuse of discretion and will reverse such a ruling only upon a finding of clear prejudice." *State v. Fischer*, 219 Ariz. 408, ¶ 24, 199 P.3d 663, 671 (App. 2008).

¶31 Hearsay is "a statement . . . the declarant does not make while testifying at the current trial or hearing . . . offer[ed] in evidence to prove the truth of the matter asserted in the statement." Ariz. R. Evid. 801(c). Hearsay does not include a witness's prior

statement "to rebut an express or implied charge that the declarant recently fabricated" his court testimony. Ariz. R. Evid. 801(d)(1)(B). Our supreme court also has concluded that when such evidence might serve a dual purpose and is classified as hearsay, it is permissible to admit the evidence to rebut an improper inference created through defense counsel's cross-examination of a witness. *State v. Kemp*, 185 Ariz. 52, 60-61, 912 P.2d 1281, 1289-90 (1996). It based this conclusion on the "open door" or "invited error" doctrine, reasoning that when defense counsel causes an improper inference to arise through cross-examination, the defendant cannot "claim error occurred" when the state rebuts that "assertion with contrary proof," even where that proof is hearsay. *Id.*; *see also State v. Garcia*, 133 Ariz. 522, 526, 652 P.2d 1045, 1049 (1982) (no error in admitting hearsay testimony where defense counsel opened "whole field of examination . . . [thus] open[ing] the door to further inquiry," which precluded "assign[ing] its fruits as error on appeal"). The state relies on this doctrine to defend the trial court's ruling.

¶32        During trial, the state examined police officer Oscar Mesta, who initially contacted P.L. after the crimes. The prosecutor's questions were limited to how P.L. had appeared and behaved during the initial interview, the method of the interview, and the general intake process. On cross-examination, however, Granados asked Mesta a series of questions about specific statements P.L. had made to him during the interview, including whether she stated Granados had threatened her with a gun, whether she stated she had left her front door open enabling Granados to go inside, and whether she stated she was unable to answer the telephone.

¶33        The state argues that the "clear import of [Granados]'s questioning, then, was to leave the jury with the impression that P.L. gave different accounts to Mesta and to the jury of what had happened" and thus opened the door to clarification from the prosecutor on redirect. Thus, it reasons, the trial court properly admitted the evidence.

¶34        From the record before us, it appears that Granados's line of questioning, if left unrebutted, might have left the jury with

this impression. P.L. had testified earlier in the trial that she had been able to answer at least some telephone calls, that Granados initially had attacked her when she went outside to feed her dog, and she did not mention being threatened with a gun. Without further explanation, the jury might have believed that P.L.'s story had substantially evolved from the time of her first police contact to her testimony at trial. Thus, providing the prosecution with an opportunity to elicit the substance of P.L.'s statements to Mesta was necessary to rebut this improper inference. *See* Ariz. R. Evid. 801(d)(1)(B); *Kemp*, 185 Ariz. at 60-61, 912 P.2d at 1289-90. And because Granados created this inference from his own questioning, he may not claim as error the court's permitting the prosecution to rebut it. *See Kemp*, 185 Ariz. at 60-61, 912 P.2d at 1289-90.

¶35 Moreover, even assuming it was error to admit the evidence, Granados cannot show he was prejudiced. Mesta related essentially the same story that P.L. had given in her earlier testimony. The introduction of this cumulative evidence was at most harmless error. *See State v. Williams*, 133 Ariz. 220, 226, 650 P.2d 1202, 1208 (1982) ("[E]rroneous admission of evidence which was entirely cumulative constitute[s] harmless error."); *State v. Shearer*, 164 Ariz. 329, 340, 793 P.2d 86, 97 (App. 1989) (same).

## Disposition

¶36 For the foregoing reasons, as well as those set out in our separate memorandum decision, we affirm Granados's convictions and sentences.