NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

IRVIN DARRYL WILLIAMS, SR., *Appellant*.

No. 1 CA-CR 16-0056
FILED 1-4-2017

Appeal from the Superior Court in Maricopa County
No. CR2014-117264-001
The Honorable Erin Otis, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

The Stavris Law Firm PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Patricia A. Orozco (Retired) delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Peter B. Swann joined.

---

**O R O Z C O**, Judge:

¶1        Irvin Darryl Williams, Sr. (Defendant) appeals from his convictions and sentences for sexual abuse, a class three felony, and a dangerous crime against children (DCAC) (Count 1); molestation of a child, a class two felony and a DCAC (Count 2); and molestation of a child, a class two felony and a DCAC (Count 3).  Defendant's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), advising this Court that after a search of the entire appellate record, no arguable ground for reversal exists.  Defendant was granted leave to file a supplemental brief *in propria persona*, and did so.

¶2        Our obligation in this appeal is to review "the entire record for reversible error."  *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999).  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1, 13-4031 and -4033.A.1 (West 2016).[1]  Finding no reversible error, we affirm.

**FACTS[2] AND PROCEDURAL HISTORY**

¶3        Wife of Defendant (BW or Mother) is the mother of MH (victim) and AW, victim's step-sister.  On April 9, 2014, BW learned from MH and AW that Defendant inappropriately touched them.  BW testified she subsequently confronted Defendant and forced him to leave their residence.  BW took MH and AW to a police station, where both engaged in forensic investigative interviews; MH with Detective F. and AW with Detective S.  Mother maintained contact with Defendant, fearing he would

---

[1]      We cite to the current version of applicable statutes absent any material change.

[2]      We view the evidence in the light most favorable to sustaining the convictions and resulting sentences.  *See State v. Guerra*, 161 Ariz. 289, 293 (1989).

leave town. On April 14, 2014, Mother went to Detective F.'s office and initiated a phone call with Defendant, which was monitored and recorded by Detective F. (the confrontation call or the call). During the call, Defendant admitted he touched MH and AW inappropriately, but much of the confrontation call's recording was lost.

¶4        At trial, MH testified that when she and her family lived in a house in Laveen, Arizona, between July 1, 2013 and November 30, 2013, Defendant rubbed her stomach, while she was sick, laying on a couch. Defendant then rubbed her breasts and vagina under her clothes. Afterward, Defendant took MH's hand and made MH rub his penis. MH was fourteen years old at the time. MH testified Defendant also abused her prior to their move to Arizona.

¶5        Detective F. testified that during the confrontation call, Defendant denied having sex with the girls, but he did not deny touching MH's breasts and vagina. Defendant also stated he needed help regarding his sexual aberration.

¶6        A jury found Defendant guilty of all three counts. The jury subsequently found two aggravating factors: Defendant abused a position of trust over the victim and his actions caused physical, emotional, or financial harm to the victim.

¶7        Defendant was sentenced to lifetime probation for Count 1, twenty years of imprisonment for Count 2, and twenty years of imprisonment for Count 3, to run concurrently. The superior court gave Defendant credit for 648 days of presentence incarceration. Defendant timely appealed.

## DISCUSSION

¶8        In his supplemental brief, Defendant raised several issues. As this is an *Anders* appeal, for the issues not preserved, we review for fundamental error. *State v. Richardson*, 175 Ariz. 336, 339 (App. 1993).

## I.    Sufficiency of the Evidence

¶9        "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004). For each crime, the record must contain sufficient evidence to support the guilty verdict beyond a reasonable doubt. *See State v. Henry*, 176 Ariz. 569, 576 (1993) (citation omitted).

3

¶10        On Count 1, the State charged Defendant with sexual abuse. Under A.R.S. § 13-1404, "[a] person commits sexual abuse by intentionally or knowingly engaging in sexual contact with . . . any person who is under fifteen years of age if the sexual contact involves only the female breast." Sexual contact means "any direct or indirect touching, fondling or manipulating of any part of the genitals, anus or female breast by any part of the body or by any object or causing a person to engage in such contact." A.R.S. § 13-1401.A.3.  Sexual abuse is designated by statute as a DCAC. A.R.S. § 13-705.P.1.(j).

¶11        At trial, MH testified that Defendant touched her breast, under her clothes, when she was fourteen years old.

¶12        Defendant was also charged with two counts of molestation of a child (Counts 2 and 3).  To molest a child, the State has to prove Defendant "intentionally or knowingly engag[ed] in or caus[ed] a person to engage in sexual contact, except sexual contact with the female breast, with a child who is under fifteen years of age."  A.R.S. § 13-1410.A.  Sexual contact means "any direct or indirect touching, fondling or manipulating of any part of the genitals, anus or female breast by any part of the body or by any object or causing a person to engage in such contact."  A.R.S. § 13-1401.A.3.

¶13        MH testified Defendant touched her vagina and caused her to touch his penis, when she was fourteen years old.  Based on the evidence, we find there was sufficient evidence to support the jury's verdicts.

## II.    Right to a Speedy Trial

¶14        Defendant argues his right to a speedy trial was violated, because the superior court granted time extensions to the State merely due to "trial conflicts."  We reject Defendant's claim.

¶15        Arizona Rules of Criminal Procedure 8.2.a (Rule) required that Defendant, a person in custody, be tried within 150 days from arraignment.  We review a superior court's Rule 8 rulings for abuse of discretion. *State v. Spreitz*, 190 Ariz. 129, 136 (1997).

¶16        Defendant was arraigned on April 30, 2014.  Trial was originally scheduled for August 27, 2014, 119 days after arraignment, but did not start until October 20, 2015, 538 days after arraignment.  A review of the record demonstrates that 362 days were excluded from the speedy trial calculation because they were either requested by Defendant, *see* Rule

8.4.a, or resulted from his requests for trial continuances, *see* Rules 8.4.d and 8.5, or Defendant did not object to the State's request.

¶17        The continuances requested by the State, to which Defendant objected, amounted to 66 days.  However, the superior court has discretion to exclude from the computation continuances requested when "extraordinary circumstances exist and that delay is indispensable to the interests of justice."  Rule 8.5.b.  The court excluded all of the 66-day delay as necessary in the interests of justice, *see* Rule 8.4 and 8.5.  We find no abuse of discretion.  *See State v. Brooks*, 127 Ariz. 130, 139 (App. 1980).

¶18        The trial, thus, began on the 110th day after arraignment, well within the required 150 days, *see* Rule 8.2.

¶19        Defendant further argues his federally guaranteed right to a speedy trial was violated.  However, "[t]he speedy trial provisions of the federal and state constitutions do not provide a specific time limit within which trial must be held."  *Henry*, 176 Ariz. at 578; U.S. Const. amend. VI; Ariz. Const. art. 2, § 24.  Because the Arizona speedy trial requirements are more stringent than the requirements annunciated by the United States Supreme Court, *see Spreitz*, 190 Ariz. at 136, and because no violation of Arizona law occurred here, we do not reach Defendant's federal law violation arguments.

### III.    Superior Court Rulings on Pretrial Motions

#### A.    Confrontation Call Recording

¶20        Defendant argues the "State's failure to disclose the circumstances surrounding the [State's] failure to preserve the entire recording" contained exculpatory evidence, and the State therefore was required to disclose it under *Brady v. Maryland,* 373 U.S. 83 (1963).  Detective F. testified that when he was uploading the tape and a separate tape of a call from another case, a portion of the recording from the other case got recorded over the confrontation call tape.

¶21        Defendant further argues he was prejudiced because he did not have sufficient time to prepare a rebuttal of the call's additional twenty minutes, disclosed on the eve of trial.  However, the additional twenty minutes were not played for the jury so there was no rebuttal for him to prepare.  No error occurred.

      B.      Sanction for Untimely Disclosed Evidence

**¶22**      Defendant also contends the superior court abused its discretion in its choice of sanctions for the State's untimely disclosure of the additional twenty minutes of the confrontation call. Defendant argues mistrial was the proper sanction.

**¶23**      We review the superior court's choice of sanctions for abuse of discretion. *State ex rel. Thomas v. Newell*, 221 Ariz. 112, 114, ¶ 6 (App. 2009). The court "shall impose any sanction it finds appropriate," taking into account "the significance of the information[,] . . . the impact of the sanction[,] . . . and the stage of the proceedings." Rule 15.7.

**¶24**      Here, the Defendant requested that, if the trial court was not inclined to preclude the additional twenty minutes of the tape, he should be granted a mistrial. The trial court precluded the State from playing the additional twenty minutes. The Defendant got the relief he sought, we find no error.

      C.      Nondisclosure of a Case Involving Witness AW

**¶25**      Defendant claims information regarding the criminal case involving AW, as a victim, should have been disclosed to the jury pursuant to *Brady*. Defendant contends disclosing AW and BW's knowledge of those proceedings and "sexual abuse charges" was relevant to victim's credibility and necessary for her impeachment, and because of that, he was denied a fair trial.

**¶26**      The superior court precluded the evidence pursuant to A.R.S. § 13-1421.A[3] as irrelevant and because none of the exceptions applied. No error occurred.

---

[3]      Evidence of specific instances of the victim's prior sexual conduct may be admitted only if a judge finds the evidence is relevant and is material to a fact in issue in the case . . . if the evidence is one of the following:
1. Evidence of the victim's past sexual conduct with the defendant.
2. Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease or trauma.
3. Evidence that supports a claim that the victim has a motive in accusing the defendant of the crime.

D.      Nondisclosure of Complaints Against Detective F.

¶27      Defendant also asserted certain administrative inquiries into Detective F.'s alleged mishandling of unrelated investigations were improperly withheld from him.

¶28      However, none of the documents Defendant attached to his supplemental brief indicate the reports resulted in any disciplinary action against Detective F.  Therefore, we find no error.

E.      Voluntariness Hearing

¶29      Defendant asserts all statements recorded during the confrontation call were involuntary and his convictions should be dismissed because the court failed to conduct a voluntariness hearing.

¶30      The Arizona Supreme Court explained in *State v. Keller* that "Miranda applies only to 'questioning initiated by law enforcement officers [a]fter a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'"  114 Ariz. 572, 573 (1977) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).  Because Defendant was not in custody when the confrontation call was made, the admissions were voluntary and we find no error.

F.      Motion to Impeach AW

¶31      Defendant argues he was denied a fair trial because he was precluded from cross-examining AW regarding her "delay" in reporting the abuse from the time "it would have been natural for her to report it if it was true."

¶32      "A trial court has broad discretion to admit or exclude evidence at trial."  *State v. Oliver*, 158 Ariz. 22, 30 (1988) (citation omitted). "[T]he Sixth Amendment right to present evidence in one's defense is limited to evidence which is relevant and not unduly prejudicial."  *Id.*

¶33      AW was not the victim whose abuse the State charged in this case.  Furthermore, Defendant has not explained how AW not reporting the

---

4. Evidence offered for the purpose of impeachment when the prosecutor puts the victim's prior sexual conduct in issue.
5. Evidence of false allegations of sexual misconduct made by the victim against others.

abuse he allegedly inflicted on her sooner, would have effectively impeached her. Therefore, the superior court did not abuse its discretion when it excluded evidence of any alleged delay in AW's reporting of her own abuse.

### G. Admission of Prior Acts Evidence

**¶34** Defendant contends the superior court "created a new standard" when it concluded "the jury could find by clear and convincing evidence that the Defendant committed these other acts," referencing his abuse of AW. Defendant further asserts evidence regarding his abuse of AW should not have been presented because MH could not explain details of her abuse on other uncharged occasions. Additionally, Defendant contends he should have received a mistrial, because he was unfairly prejudiced when BW testified about Defendant abusing his "biological daughter."

**¶35** When a defendant is charged with one of the sexual offenses listed in A.R.S. § 13-1420.C (including sexual abuse and molestation of a child), the State "may introduce 'evidence of other crimes, wrongs, or acts,' if the court finds that such evidence 'provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged.'" *State v. Aguilar*, 209 Ariz. 40, 47, ¶ 24 (2004) (quoting Ariz. R. Evid. 404(c)(1)(B)). "[T]he trial court must determine that clear and convincing evidence supports a finding that the defendant committed the other act." *Id.* at 49, ¶ 30; Ariz. R. Evid. 404(c)(1)(A). We review the trial court's rulings on admissibility of other acts evidence for abuse of discretion. *Aguilar*, 209 Ariz. at 49, ¶ 29.

**¶36** The superior court did not abuse its discretion in admitting evidence of propensity as it listened to and watched the forensic interviews with both MH and AW, as well as the confrontation call as agreed by the parties. *See Aguilar*, 209 Ariz. at 50, ¶ 35 (holding credibility determination based on observing victim's account of the acts over defendant's account was necessary to find clear and convincing evidence). The court found that a jury could find by clear and convincing evidence that Defendant committed the other acts of sexual abuse and molestation, because the acts and the surrounding circumstances were similar. *See* Rule 13.3.a.(1). The court also found "a reasonable basis to infer the defendant had a character trait beginning to arise from abhorrent sexual propensity to commit the crime charged." Lastly the court found the evidentiary value of the proof of the other acts was not substantially outweighed by danger of unfair prejudice. We find no abuse of discretion.

## IV. Due Process Violations

### A. Grand Jury Proceeding

¶37 Defendant alleges that Detective F. committed perjury when he testified to the grand jury about what he observed during the confrontation call, as opposed to what was recorded. We cannot consider claims regarding grand jury proceedings. *State v. Agnew*, 132 Ariz. 567, 573 (App. 1982).

### B. Allegations of Perjury by Witnesses During Trial

¶38 Defendant further argues BW perjured herself during her testimony regarding her experience with the "judicial system."

¶39 However, BW's experience with the judicial system does not "go to the foundation of the case." *See Henderson,* 210 Ariz. at 567, ¶ 20. Defendant also failed to demonstrate how this alleged error prejudiced him. *See id.*

¶40 Next, Defendant claims that Detective F. perjured himself during his testimony as to the time arrangements of the confrontation call. Again, Defendant has shown no prejudice and thus no fundamental error. *See id.* at ¶ 24.

¶41 Finally, Defendant asserts witness AW perjured herself regarding reasons for delaying telling she was also abused by Defendant. However, the State did not bring charges based on AW's abuse, so this information does not go to the foundation of the case. *See id.*

### C. Striking a Juror for Cause

¶42 Defendant argues juror 30 should have been stricken for cause, because he interned at the Maricopa County prosecutor's office, and because his mother worked for Maricopa County as well. Defendant struck juror 30, so even if it was error to not strike him, he did not participate as a juror and any error was harmless.

### D. Right to Self-Representation

¶43 Defendant argues he was denied a right to represent himself when he was excluded from bench conferences, while his advisory counsel was present, and when he was forced to be represented by an attorney against his will.

¶44        Defendant was represented by counsel until the final pretrial management conference, when Defendant moved to change counsel and represent himself.  On the record, the Defendant knowingly, intelligently, and voluntarily waived representation by legal counsel and the court appointed an advisory counsel.  Defendant agreed that once he had an opportunity to represent himself, but subsequently requested a return of a legal counsel, he would not be able to re-represent himself.

¶45        In his brief, Defendant does not point to any specific instances of when he was denied a right to represent himself.  Because Defendant was representing himself, we cannot say his rights were violated.

## V.       Prosecutorial Misconduct

### A.       Comments on Defendant's Statements to the Police

¶46        Defendant argues the State made improper comments during its closing argument which were not supported by the evidence.  The State argued during closing argument that when the police contacted Defendant and asked him why he was homeless, "he [didn't] tell them, crazy wife and her messed-up daughters are making false allegations . . . he ma[de] something up."  Defendant asserts that "[t]he simple answer to the State's question [why [didn't] he tell them?] is that the defendant chose to exercise his right to remain silent and not to testify."

¶47        In its closing argument, the State commented on the information Defendant provided to the police officer while the officer was taking him to custody; not on Defendant's right to remain silent.

¶48        Defendant also argues that the prosecutor's comments about him being kicked out of the home by BW was not supported by the evidence.  BW testified that after she confronted Defendant with allegations by MH and AW, she "told him to get out."  No error occurred.

### B.       Comments on Witness Credibility

¶49        Defendant also complains the prosecutor "vouched" for BW's credibility. During closing arguments, the prosecutor pointed out disagreement in testimony and then stated "So, yes, [BW's] testimony may be inconsistent when it comes to things she didn't see or couldn't perceive because she was irrational and emotional, but what she - - her testimony fits in with what you'll hear in the confrontation call."  The prosecutor's comments did not vouch for BW's credibility.

¶**50**      "When determining whether a prosecutor's statements improperly vouched for a witness's credibility, the statements must be considered in context." *State v. Ramos*, 235 Ariz. 230, 238, ¶ 28 (App. 2014) (citation omitted). Moreover, the trial court "instructed the jury that the attorneys' closing arguments were not evidence, and we presume the jurors followed the court's instructions." *Id.* at ¶ 30. We find no error in the prosecutor's comments.

        C.     Other Comments

¶**51**      Defendant further argues the prosecutor improperly asked Detective F. about the content of excluded portions of the confrontation call. The court precluded the State from playing the recovered portions of the confrontation call, but did not preclude the witnesses who heard the tape from testifying as to its contents. Because Detective F. had personal knowledge of the whole confrontation call, the prosecutor's questioning was not error. Defendant further argues that the prosecutor misstated the victim's position on the couch and the difference between "fly" and "sly." However, we are unable to locate any misstatements that Defendant complains of, therefore, the issue is waived.

## VI.   Judicial Bias

¶**52**      Defendant alleges the trial judges were biased. First, he alleges that Commissioner Otis prosecuted a criminal case involving AW, as a victim, and failed to give adequate instructions to the jury. However, Defendant has not pointed to anything Commissioner Otis did to indicate bias and has not explained which jury instruction the court failed to give.

¶**53**      Defendant also alleges that Judge Fenzel called him a "fool," "made sure [Defendant] would not be ready for trial," and refused to change Defendant's counsel.

¶**54**      "[D]efendant must allege a type of [judicial] bias that would implicate his due process rights, such as bias based on a 'direct, personal, substantial pecuniary interest,' in order to constitute [structural] error." *State v. Granados*, 235 Ariz. 321, 325, ¶ 11 (App. 2014). "Other types of bias, such as '[p]ersonal bias or prejudice, . . . 'would not be [a] sufficient basis for imposing a constitutional requirement under the Due Process Clause.'" *Id.*

¶**55**      Defendant filed a motion to change counsel and to represent himself on November 25, 2014. The motion was granted on January 27, 2015, after Defendant assured the court that he would be ready to proceed

with trial the following week. We find no bias by Judge Fenzel in granting Defendant's motion and no basis for the claim that Judge Fenzel made sure he would not be ready for trial.[4]

**¶56**        During that same hearing, Judge Fenzel did not call Defendant a fool, he merely cautioned Defendant about representing himself and told him of the saying "[h]e who represents himself has a fool for a client." We find no bias in the judge's cautionary remarks.

**¶57**        Defendant finally argues that Judge Fenzel advocated the case for the State, consulted on matters with Defendant's own advisory counsel without Defendant being present, and "refused to require the State to respond to discovery request." Rule 31.13.c(1)(vi) requires each argument to provide "citations to the . . . parts of the record relied on"; failure to do so can constitute waiver of that claim. Defendant has not provided citations to the record, he has therefore waived these issues.

## VII.        Cumulative Error

**¶58**        Defendant asserts cumulative error. "We have never recognized a 'cumulative error' theory . . . [i]nstead, we evaluate each of defendant's claimed errors and determine if it, independently, requires reversal." *State v. Prince*, 160 Ariz. 268, 274 (1989).

## CONCLUSION

**¶59**        We have read and considered counsel's brief, carefully searched the entire record for reversible error and found none. *Clark*, 196 Ariz. at 541, ¶ 49. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure and substantial evidence supported the finding of guilt. Defendant was present and represented by counsel at all critical stages of the proceedings. At sentencing, Defendant and his counsel were given an opportunity to speak and the court imposed a legal sentence.

**¶60**        Counsel's obligations pertaining to Defendant's representation in this appeal have ended. Counsel need do nothing more than inform Defendant of the status of the appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). Defendant shall have thirty days from the date of this

---

[4]        We note that while the motion for change of counsel was granted on January 27, 2015, the trial did not actually start until October 2015.

decision to proceed, if he so desires, with an *in propria persona* motion for reconsideration or petition for review.

**¶61**         For the above reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA