NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA,
*Appellee*,

*v.*

SILAS DEON WHITE,
*Appellant*.

No. 1 CA-CR 18-0248
FILED 8-1-2019

Appeal from the Superior Court in Maricopa County
No.  CR2014-124716-001
The Honorable Roland J. Steinle, Judge, *Retired*

**AFFIRMED IN PART, VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Bain & Lauritano, PLC, Glendale
By Sheri M. Lauritano
*Counsel for Appellant*

Silas Dean White, San Luis
*Appellant*

-----

## MEMORANDUM DECISION

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Michael J. Brown and Judge Jennifer M. Perkins joined.

-----

J O H N S E N, Judge:

¶1        Silas Deon White timely filed this appeal in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), following his convictions of possession of a narcotic drug for sale and transporting or transferring a narcotic drug for sale, both Class 2 felonies. White's counsel has searched the record on appeal but found no arguable question of law that is not frivolous and asks this court to search the record for fundamental error. *See Smith v. Robbins*, 528 U.S. 259, 284 (2000); *Anders*, 386 U.S. at 744; *State v. Clark*, 196 Ariz. 530, 537 (App. 1999). White has filed a supplemental brief, which we address below.

¶2        This Court's subsequent review of the record revealed a possible double jeopardy violation, and we ordered briefing pursuant to *Penson v. Ohio*, 488 U.S. 75 (1988). For the reasons that follow, we vacate White's conviction of possession of a narcotic drug for sale and the resulting sentence but affirm his conviction and the sentence imposed for transporting or transferring a narcotic drug for sale.

### FACTS AND PROCEDURAL BACKGROUND

¶3        White carried a package into a post office, laid the package on the counter and paid cash to mail it to Milwaukee. A postal inspector who saw the transaction thought the package was suspicious and asked a postal inspector in Milwaukee to intercept the package. In Milwaukee, a K-9 officer alerted to the possible presence of drug contraband. The Milwaukee postal inspector obtained a search warrant and opened the package, which contained approximately 374 grams of cocaine. Fingerprints lifted from the package, including prints on the inside flap of the box, matched White's fingerprints.

¶4        The State charged White with one count of possession of a narcotic drug for sale and one count of transporting or transferring a narcotic drug for sale. *See* Ariz. Rev. Stat. ("A.R.S.") § 13-3408(A)(2), (7)

(2019).[1] A 12-person jury found him guilty of both charges. After finding White had two historical prior felony convictions, the superior court sentenced him as a category-three repetitive offender to concurrent presumptive sentences of 15.75 years, with 116 days' presentence incarceration credit. *See* A.R.S. § 13-703(C), (J) (2019).

**¶5** White timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) (2019), 13-4031 (2019) and -4033(A)(1) (2019).

## DISCUSSION

### A. The Supplemental Brief.

**¶6** In his supplemental brief, White argues misconduct by the superior court judge violated his due-process right to a fair trial.

**¶7** A defendant has a right to a trial presided over by a judge who is impartial and free of bias or prejudice. *State v. Brown*, 124 Ariz. 97, 99 (1979). Although cases "generically refer to 'judicial bias' as structural error, the defendant must allege a type of bias that would implicate his due process rights, such as bias based on a 'direct, personal, substantial pecuniary interest,' in order to constitute such error." *State v. Granados*, 235 Ariz. 321, 325, ¶ 11 (App. 2014) (quoting *Tumey v. Ohio*, 273 U.S. 510, 523 (1927)). Otherwise, claims of personal bias or prejudice do not implicate structural error review. *Granados*, 235 Ariz. at 325, ¶ 11. In Arizona, a defendant is "entitled to a change of judge if the party shows that the assigned judge's interest or prejudice would prevent a fair and impartial hearing or trial." Ariz. R. Crim. P. 10.1(a). "If a defendant fails to object on the basis of a trial judge's bias . . . by filing a motion and affidavit pursuant to Rule 10.1, he forfeits review for all but fundamental, prejudicial error." *Granados*, 235 Ariz. at 326, ¶ 13.

**¶8** White does not assert his trial judge acted based on any constitutionally impermissible motives. We therefore review his arguments for fundamental error because he failed to file a motion pursuant to Rule 10.1 in the superior court. *See Granados*, 235 Ariz. at 326, ¶ 13. "[T]he first step in fundamental error review is determining whether

---

[1] Absent material revision after the date of an alleged offense, we cite the current version of a statute or rule.

trial error exists." *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018).[2] If trial error exists, we must determine whether "(1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, or (3) the error was so egregious that he could not possibly have received a fair trial. . . . The defendant bears the burden of persuasion at each step." *Id.* (emphasis omitted).

¶9 A trial judge is presumed to be free from bias. *State v. Henry*, 189 Ariz. 542, 546 (1997). "Bias and prejudice means a hostile feeling or spirit of ill-will . . . towards one of the litigants." *State v. Myers*, 117 Ariz. 79, 86 (1977). Judicial rulings alone rarely support a finding of bias or partiality in the absence of proof of an extrajudicial source of bias. *See State v. Ellison*, 213 Ariz. 116, 129, ¶ 40 (2006). "[A]dverse rulings to which a party assigns no error" cannot demonstrate judicial bias. *State v. Curry*, 187 Ariz. 623, 631 (App. 1996).

¶10 By the same token, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge[,] [but] . . . they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). "A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune." *Id.* at 556. We must review allegations of bias "in light of the judge's duty to 'require order and decorum in proceedings before the court.'" *Granados*, 235 Ariz. at 326, ¶ 14 (quoting Ariz. R. Sup. Ct. 81, Canon 2.8(A)).

¶11 White first argues that, in the presence of the jury, the judge informed White's counsel that he would overrule any evidentiary objections White's counsel made. This contention, however, mischaracterizes the record. At the beginning of the second day of trial and outside the presence of the jury, the prosecutor mentioned to the court that White's counsel had indicated he did not want a particular law-enforcement witness to testify that he had arrested White. White's counsel then acknowledged that the defense would object to such testimony on

---

[2] White's counsel moved for a mistrial after the court reprimanded him during trial. Counsel filed another motion for a mistrial after the court made a ruling that, as counsel characterized it, prevented him from cross-examining a witness about a discrepancy in weight of the cocaine. The court denied both motions, and White does not challenge either of these rulings on appeal.

relevance grounds. The judge replied that, because the defense had not raised the issue in a pretrial motion *in limine*, he would not entertain argument on the matter. White's counsel then asked, "You mean during the trial[?]" To which the judge responded, "I'm just saying if you're going to object, then I'll tell you ahead of time that I'm going [to] overrule the objection."

¶12 We do not understand the cited exchange to mean that the judge was stating he would overrule *any* defense objection to any witness's testimony. Instead, the judge was stating his ruling on a specific evidentiary objection. When the State later offered evidence of White's arrest, White's counsel once again objected based on relevance and the judge overruled the objection. *See Curry*, 187 Ariz. at 631.

¶13 White next argues that "at one point during the trial the judge ordered the court reporter not to record anything said by defense counsel." Again, the record does not support White's contention. During the State's case, the prosecutor handed a witness an exhibit to refresh the witness's memory. Then, as the witness began responding to the prosecutor's question, White's counsel interrupted the witness by saying, "What are [sic] reading from, Your Honor? He's supposed to refresh his recollection." At that point, the judge dismissed the jury and told White's counsel the following:

> Please listen very carefully because I'm giving you an admonition. . . . If you do not object until the witness starts answering the question, you have to wait until the end, and then move to strike.

> Either interpose your objection before he starts, . . . but you can't interrupt the witness. We're taking a record here, and the court reporters cannot take down two things, and they're going to stay with the witness, and they're going to take what the witness says, and they're not going to put in their reporter notes your objection. . . . So did the court reporters understand, if [the witness is] answering, just continue to take his answer. Whatever [White's counsel] says, you don't have [to] worry about, then he has to deal with it on the bottom end. Correct court procedure, and we're going to make a record and make it correct.

¶14 The judge's statements to White's counsel, though stern, reflected nothing more than courtroom administration consistent with a

judge's duty to "require order and decorum in proceedings before the court." Ariz. R. Sup. Ct. 81, Canon 2.8(A). The judge did not state or imply that the court reporter should not record White's counsel's objections when they were properly made; he simply told counsel to object before or after a witness is speaking so the court reporter could accurately record the objection. *See Liteky*, 510 U.S. at 556.

¶15 Finally, White argues that "during the trial and in the presence of the jury, [the judge] would not permit [his counsel] to question witness(es) about missing evidence in the case." We disagree. At trial, the Milwaukee postal inspector testified he weighed two plastic bags, which were taped closed and contained the suspected cocaine, and determined that they weighed 448 grams. Later, a forensic chemist called by the State testified she weighed the suspected cocaine as well as the plastic wrapping around the substance, but that she subtracted the weight of the plastic bags "to get just the weight of the [cocaine]," which she determined to be about 374 grams.

¶16 The interaction to which White objects on appeal occurred when White's counsel was cross-examining the forensic chemist regarding the discrepancy in the two weights. White's counsel stated, "we've heard testimony in this court that it was the weight of two baggies that were wrapped in black plastic tape, with suspected cocaine, which is Exhibits 2 and 3, and that it weighed 448 grams." The State objected to this statement and the judge sustained the objection. Later, White's counsel stated, "I'm going to ask it again, Judge. If this was the question that was objected to, then I'll give them an opportunity to object. If we heard that the weight was 440," but the judge interrupted counsel and stated:

> [T]he reason the objection was sustained is the law says: One witness will not comment on the testimony of any other witness. That's why we have the Rule of Exclusion. One witness doesn't hear the other witness's testimony, so the objection is sustained. The form of your question that you're asking is not proper.

White's counsel then asked the witness, "Were you ever asked to . . . account for close to three ounces of missing cocaine?" The State objected to this question, asserting it "[c]all[ed] for a conclusion," the judge sustained the objection and White's counsel ended his cross-examination.

¶17 After examining the record, we disagree with White's contention that the judge impermissibly prevented his counsel from

questioning the witness.  The judge simply sustained an objection based on the form of the question, leaving counsel free to explore the discrepancy in weight by asking a question that did not violate the rules of evidence or by presenting affirmative evidence.  Additionally, as the judge later stated, White's counsel was free to discuss the discrepancy in his closing argument, and counsel did do so.  *See Curry*, 187 Ariz. at 631.

**¶18**        White also argues that the trial transcript related to his counsel's cross-examination about the discrepancy in weight did not accurately reflect what went on at trial.  We have reviewed the recording of the trial and have found nothing to support White's contention.

**¶19**        Besides these specific instances of alleged judicial misconduct, White cites an order by the Arizona Commission on Judicial Conduct as evidence that he was deprived of a fair trial.  After the trial, White filed a complaint with the Commission arguing the judge had violated the Arizona Code of Judicial Conduct during his trial.  White alleged the judge displayed "habitual intemperance" and "conduct prejudicial to the administration of justice that brings the judicial office into disrepute."  After investigating, the Commission issued a warning letter to the judge, finding he "failed to be patient, dignified and courteous to [White's] attorney" in violation of Rule 2.8(B) of the Arizona Code of Judicial Conduct.

**¶20**        Contrary to White's contention, the Commission's finding does not mean the judge was biased against him.  Rule 2.8(B) does not address bias or prejudice, but rather addresses judicial decorum, requiring a judge to be "patient, dignified, and courteous" toward all parties.  A violation of Rule 2.8(B) does not establish that a judge had a "hostile feeling or spirit of ill-will . . . towards one of the litigants," *Myers*, 117 Ariz. at 86, let alone that there was fundamental error, *Escalante*, 245 Ariz. at 142, ¶ 21.

**¶21**        White further contends the judge's "comportment toward [his lawyer] was so egregiously hostile and intemperate" that it "forced" him to fire his counsel at the conclusion of the trial for fear of further "animus" from the judge during sentencing.  White, however, does not explain how proceeding *pro se* during sentencing prejudiced him, particularly given that he stipulated with the State to ask the judge to impose presumptive sentences.

**¶22**        After reviewing the entire record, we conclude it does not reveal "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555.  White has shown neither an

extrajudicial source of bias nor fundamental error. *See Escalante*, 245 Ariz. at 142, ¶ 21.

**B.      Double Jeopardy Violation.**

**¶23**          In his *Penson* brief, White argues his two convictions and sentences violate double jeopardy principles. We agree.

**¶24**          The Double Jeopardy Clauses of the United States and Arizona Constitutions protect criminal defendants from multiple convictions and punishments for the same offense. *See Lemke v. Rayes*, 213 Ariz. 232, 236, ¶ 10 (App. 2006); *see also* U.S. Const. amend. V; Ariz. Const. art. 2, § 10. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *see also State v. Eagle*, 196 Ariz. 188, 190, ¶ 6 (2000). Thus, a defendant may not be convicted of both an offense and its lesser-included offense because they are considered the "same offense" for double jeopardy purposes. *Lemke*, 213 Ariz. at 238, ¶¶ 16-18.

**¶25**          An offense is a lesser-included of another when, "by its very nature, [it is] always a constituent part of the greater offense." *State v. Chabolla-Hinojosa*, 192 Ariz. 360, 363, ¶ 12 (App. 1998). In determining whether offenses are the same for purposes of double jeopardy, we look to the elements of the offenses and not to the particular facts that will be used to prove them. *See State v. Price*, 218 Ariz. 311, 313, ¶ 5 (App. 2008).

**¶26**          The crime of possession of a narcotic drug for sale requires proof of the following: (1) the defendant knowingly *possessed* a narcotic drug; (2) the substance was in fact a narcotic drug; and (3) the possession was for purposes of sale, *see* A.R.S. § 13-3408(A)(2) (emphasis added), where sale means an exchange for anything of value or advantage, present or prospective. A.R.S. § 13-3401(32) (2019); *cf.* Rev. Ariz. Jury Instr. ("RAJI") Stand. Crim. 34.082 (4th ed. 2018). The crime of transporting or transferring a narcotic drug for sale requires, as relevant here, proof of the following: (1) the defendant knowingly *transported* or *transferred* a narcotic drug for sale; and (2) the substance was in fact a narcotic drug. *See* A.R.S. § 13-3408(A)(7) (emphasis added); *cf.* RAJI Stand. Crim. 34.0871 (4th ed. 2018).

**¶27**          The only difference between the two crimes is that § 13-3408(A)(2) requires proof that the defendant possessed the drug for sale, while § 13-3408(A)(7) requires proof the defendant transported or transferred the drug for sale. Interpreting A.R.S. § 13-3407 (2019), which

uses precisely the same nomenclature with respect to a "dangerous drug," our supreme court held in *State v. Cheramie*, 218 Ariz. 447 (2008), that possession of a drug is a lesser-included offense of transporting or transferring the drug. "Given Arizona's broad definition of 'possess,' we cannot conceive how a person can 'transport' drugs without having possession of or dominion or control over them." *Id.* at 449, ¶ 11.

¶28　　　We likewise conclude that a person cannot transfer or transport a narcotic drug without first having physical possession of or dominion or control over the narcotic drug. Accordingly, possession of a narcotic drug for sale under § 13-3408(A)(2) is a lesser-included offense of transporting or transferring a narcotic drug for sale under § 13-3408(A)(7). *See Lemke*, 213 Ariz. at 238, ¶¶ 16-18; *Chabolla-Hinojosa*, 192 Ariz. at 363, ¶ 12 ("[W]hen the charged possession [of marijuana] for sale is incidental to the charged transportation for sale, it is a lesser-included offense, for a person cannot commit the transportation offense without necessarily committing the possession offense.").

¶29　　　In its brief, the State argues that White's carrying of the package to the counter could be prosecuted as possession, while his paying money to mail the package could be prosecuted as transferring or transporting it for sale. But even under that theory, White's possession of the drug was incidental to his transfer or transport of the drug. The State offers no legal authority to support its argument that carrying a package of drugs into a post office and paying to mail the package of drugs may be punished under both statutes.

¶30　　　Because a double jeopardy violation constitutes fundamental, prejudicial error, *see State v. McGill*, 213 Ariz. 147, 153, ¶ 21 (2006), we vacate White's conviction of possession of a narcotic drug for sale and the resulting sentence, *see Chabolla-Hinojosa*, 192 Ariz. at 365, ¶ 21.

## C.　　Due Process Review.

¶31　　　The record reflects White received a fair trial. He was represented by counsel at all stages of the proceedings against him and was present at all critical stages. The State presented both direct and circumstantial evidence sufficient to allow the jury to convict White of the crime of transporting or transferring a narcotic drug for sale. The jury was properly comprised of 12 members. The court properly instructed the jury on the elements of the charges, the State's burden of proof, the presumption of innocence and the necessity of a unanimous verdict. The jury returned a unanimous verdict, which was confirmed by juror polling. The court

received and considered a presentence report, addressed its contents during the sentencing hearing and imposed a legal sentence for the crime of transporting or transferring a narcotic drug for sale of which White was convicted.

## CONCLUSION

**¶32** We vacate White's conviction and sentence on the charge of possession of a narcotic drug for sale, but affirm White's conviction and resulting sentence on the remaining charge. *See Leon*, 104 Ariz. at 300. Although the court granted White one more day of presentence incarceration credit than was warranted, absent a cross-appeal by the State, we will not correct the sentence. *State v. Dawson*, 164 Ariz. 278, 286 (1990).

**¶33** Defense counsel's obligations pertaining to White's representation in this appeal have ended. Counsel need do no more than inform White of the outcome of this appeal and his future options, unless, upon review, counsel finds "an issue appropriate for submission" to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). On the court's own motion, White has 30 days to proceed, if he wishes, with a *pro per* motion for reconsideration. White has 30 days from the date of this decision to proceed, if he wishes, with a *pro per* petition for review.



AMY M. WOOD • Clerk of the Court
FILED: AA