NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

TYLER RAY BALLI, *Appellant*.

No. 1 CA-CR 18-0904
FILED 3-17-2020

Appeal from the Superior Court in Mohave County
No. S8015CR201800084
The Honorable Richard D. Lambert, Judge

**AFFIRMED IN PART, REVERSED IN PART, REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

---

**C A M P B E L L**, Judge:

¶1        Tyler Ray Balli appeals from his convictions and sentences for first-degree burglary and aggravated harassment by domestic violence. We affirm the convictions and his sentence for aggravated harassment but reverse his sentence for first-degree burglary and remand to the superior court for further proceedings.

## BACKGROUND[1]

¶2        Balli was the step-son of the victim[2]. Balli has a step-sister and two adult step-nephews, E.B. and B.B. (the victim's grandsons). In January 2017, the victim obtained an order of protection against Balli. The order listed the victim's residence as a protected location and prohibited Balli from having any contact with the victim.

¶3        In the early hours of Christmas morning 2017, Balli entered the victim's home through an unlocked back door without knocking. He was carrying a large homemade knife. A security camera recorded Balli entering the house. The camera system alerted one of the grandsons on his phone. The grandson reviewed the video and saw Balli enter the back door with a knife. He first called the police and then called the victim to alert him that Balli was in the house, and the police were on the way. Over an hour later, Balli exited the house through the same back door. He was still holding the knife. The grandson who was still watching a live-feed from the security camera, observed Balli leaving and saw him hide an object behind a clay pot. Police found Balli trying to climb over the block wall surrounding the back yard. They found the knife near the back door.[3] The victim's daughter arrived minutes later and observed that the victim was

---

[1]        We view the evidence in the light most favorable to sustaining the jury's verdict. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

[2]        The victim died in February 2018 less than two months after the incident resulting in Balli's convictions.

[3]        The knife was not admitted into evidence at trial.

"physically and emotionally shaken" and frightened after the incident. The victim's wife, Balli's mother, had dementia. By the time the daughter arrived, Balli's mother had already forgotten about the incident.

¶4          After his arrest, Balli mailed his mother a postcard apologizing for "harassing your household/or your home." He wrote that he had meant no harm and that he had the knife because there were "wild animals" around the couple's house, including "wild snakes, donkeys, mountain cats and . . . wild fish."

¶5          A Mohave County grand jury charged Balli, by indictment, with one count of first-degree burglary (count 1), one count of aggravated harassment by domestic violence (count 2), and one count of possession of drug paraphernalia (count 3). The State dismissed count 3 before trial. The superior court ordered a Rule 11 evaluation of Balli, and he was found to be competent.

¶6          A jury found Balli guilty of counts 1 and 2. The superior court found that count 1 was a dangerous offense and sentenced Balli to a mitigated sentence of nine years in prison. The court sentenced Balli to a presumptive sentence of one year in prison for count 2 and ordered the sentences to be served concurrently. Balli timely appealed. He raises ten issues in his opening brief.

## DISCUSSION

### A. Request for Change of Counsel

¶7          Balli first argues that the superior court denied him his Sixth Amendment right to counsel by denying his request for a new attorney. We review the court's denial of a request for change of counsel for an abuse of discretion. *State v. Moody*, 192 Ariz. 505, 507, ¶ 11 (1998) (citation omitted).

¶8          Balli requested a change of counsel in writing twice before trial. He claimed that his attorney, Ron Gilleo, was "dragging [his] feet" and "withholding evidence to slow play my case," and that Gilleo was "refusing to file motions for release conditions, Donald hearing, for suppression, dismissal," and to "take[] the indictment back to the grand jury." Balli alleged that Gilleo had a conflict of interest and indicated that he would be filing a complaint against Gilleo with the bar association.[4]

---

[4]          It is unclear what Balli perceived Gilleo's conflict of interest to be.

¶9            Balli claimed that Gilleo was "indifferent" towards his case, that Gilleo had "done no work in 7 months besides one ineffective interview and phone call," that Gilleo had failed to communicate with him and that Gilleo was a "Prosecutor Assistant." He also complained that Gilleo had requested a Rule 11 screening.

¶10          The superior court addressed Balli's request for a change of counsel at a status conference in August 2018. Gilleo explained that:

> [W]hen [he] tried to talk to [Balli] . . . he won't let [him] explain the law and the evidence. . . . [H]e'll either hang up on [him], or he'll say the phone is currently not working. He doesn't allow [him] to do [his] job, which is to explain the law and the evidence as to how it's going to play out at trial. We had a trial date that was set, and it was actually [Balli] who said we're not ready for trial . . . whether a different attorney would be more successful, maybe, I don't know.

Balli told the court that he believed Gilleo was ineffective and that he had not contacted any witnesses, including his mother. He claimed that his case was the result of a "living estate battle," that he was the victim, "[a]nd [Gilleo] declined to do any inquiring after 8 months of my version of the case."

¶11          The court told Balli that it sounded like he was not cooperating, not letting Gilleo explain his legal situation, and "if you're not going to allow him to do that, I don't see how any attorney in that situation can be effective." The court denied Balli's request for change of counsel and expressed that Balli was "lucky to have gotten [Gilleo] as a lawyer."

¶12          A criminal defendant has a constitutional right to representation by competent counsel. U.S. Const. amend. VI; Ariz. Const. art. 2, § 24; *State v. LaGrand*, 152 Ariz. 483, 486 (1987). "A defendant is not, however, entitled to counsel of choice, or to a meaningful relationship with his attorney." *Moody*, 192 Ariz. at 507, ¶ 11 (citation omitted). "But when there is a complete breakdown in communication or an irreconcilable conflict between a defendant and his appointed counsel, that defendant's Sixth Amendment right to counsel has been violated," and any resulting conviction must be reversed. *State v. Torres*, 208 Ariz. 340, 342, ¶ 6 (2004) (citations omitted). The defendant has the burden of demonstrating either "a total breakdown in communications" or an "irreconcilable conflict with his attorney." *Id.* at 343, ¶ 8 (citation omitted). "To satisfy this burden, the defendant must present evidence of a 'severe and pervasive conflict with

his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible.'" *State v. Hernandez*, 232 Ariz. 313, 318, ¶ 15 (2013) (quoting *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002)). A colorable claim "must go beyond personality conflicts or disagreements with counsel over trial strategy." *Id.* (quoting *State v. Cromwell*, 211 Ariz. 181, 187, ¶ 30 (2005)). A defendant's rights must be balanced with judicial economy. *LaGrand*, 152 Ariz. at 486. In balancing these interests, the court should consider whether an irreconcilable conflict exists, whether new counsel would be confronted with the same conflict, the timing of the motion, inconvenience to witnesses, time already elapsed between the offense and trial, proclivity to change counsel, and quality of counsel. *Id.* at 486–87 (citations omitted).

**¶13** Balli argues that he had an irreconcilable conflict with Gilleo, and that there was a complete breakdown of the attorney-client relationship. Based on this conflict, he asks that his convictions be reversed. The State contends that Balli's request for change of counsel merely evidenced differences in trial strategy and not a complete breakdown in the attorney-client relationship.

**¶14** On this record, we find no abuse of discretion. Balli failed to establish that his relationship with Gilleo was completely fractured either because of an irreconcilable conflict or because of a total breakdown in communication. We discern no "severe and pervasive" conflict between Balli and Gilleo.[5] At a subsequent pre-trial conference when Gilleo and Balli informed the court that he wanted to represent himself, Balli told the court that he wanted Gilleo to remain as advisory counsel, stating, "I have confidence in [Gilleo]. He's a professional." And the court had previously noted that Gilleo was "one of the best defense attorneys in the county." To the extent that Balli argues that Gilleo was ineffective, we will not consider those arguments in this direct appeal. *See Torres*, 208 Ariz. at 345, ¶ 17 ("Ineffective assistance of counsel is a separate issue that can be raised only in a proceeding for post-conviction relief.").

---

[5] Although Balli indicated he planned to file a bar complaint against Gilleo, there is nothing in the record suggesting he ever did so, nor did the threat prompt Gilleo to request to withdraw. Moreover, a bar complaint against appointed counsel, by itself, does not create an irreconcilable conflict that requires an attorney to withdraw. *State v. Henry*, 189 Ariz. 542, 549 (1997).

## B. Request for Continuance

¶15        Balli next argues that the superior court denied him his right to meaningful self-representation and his right to prepare and present a defense by failing to grant his request to continue the trial. We review a defendant's request for a continuance to accommodate self-representation for an abuse of discretion. *State v. Lamar*, 205 Ariz. 431, 436, ¶ 26 (2003). Whether denying a continuance violates a defendant's constitutional rights depends on the circumstances of a particular case. *State v. Hein*, 138 Ariz. 360, 369 (1983) (citations omitted). The "trial court maintains discretion because a defendant's right to represent himself does not exist in a vacuum. The court must consider the defendant's right in conjunction with a victim's constitutional right to a speedy trial and the court's prerogative to control its own docket." *Lamar*, 205 Ariz. at 436, ¶ 27 (citation omitted). "[O]nly an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the defendant's constitutional right to self-representation." *Id.* at 436–37, ¶ 27 (internal quotation omitted). In evaluating a request for continuance made in conjunction with a request for self-representation, the court "should consider factors such as the reasons for the defendant's request, the quality of counsel, the defendant's proclivity to substitute counsel and the expected disruption if the trial court granted the continuance." *Id.* at 437, ¶ 29 (internal quotation omitted).

¶16        In August 2018, the superior court set trial for November 2018. Approximately two weeks before trial, Balli moved to represent himself. After a hearing in early November, the court granted Balli's motion and appointed Gilleo as advisory counsel. Balli requested a continuance "to prepare for [his] defense." He indicated that witnesses had not been contacted or interviewed.[6] The court denied the motion, noting that Balli "had plenty of notice" about the trial date and that his request to represent himself was made "at the last minute, last hour." After the court denied the motion, Balli told the court his witnesses included those the State would be calling, and in addition, he wanted to subpoena his step-father's next-door neighbor and his mother, who had moved to Texas.

¶17        The superior court's decision not to continue the trial was neither "unreason[ed]" nor "arbitrary." Balli requested a continuance just 12 days before the first day of trial. This was the second trial setting, and

---

[6]        In contrast, at a status conference on September 10, 2018, Gilleo informed the superior court that he was "completely done with the interviews," and "I believe we're set to go [to trial]."

the jurors had already been summoned. [7] Continuing the trial would have caused considerable disruption and delay. Accordingly, we find no abuse of discretion.

### C. Preclusion of Evidence

**¶18**        Balli next argues that the superior court denied his constitutional right to present a defense by precluding relevant evidence and limiting his cross-examination of the two grandsons.[8] "We review limitations on the scope of cross-examination for [an] abuse of discretion." *State v. Champagne*, 247 Ariz. 116, ¶ 47 (2019) (citation omitted).

**¶19**        Balli was representing himself when he cross-examined the victim's grandsons. The State objected based on relevancy when Balli asked one grandson whether there was a time when his mother was unaware that there were cameras at the house. The superior court sustained the objection. Balli later asked, "can you think of a time that my mom or step-dad called the police regarding this restraining order?" The State objected, explaining, "It would be sort of converse of Rule 404, whether the existence or the absence of such calls is not relevant to what happened on one given date."

**¶20**        During his cross-examination of the other grandson, Balli asked, "Have you seen the video?" He responded that he had, and Balli then said, "The door was left open." The court stated, "Okay. You're making a statement, and you're not allowed to do that. . . . So if you want to ask a question and get the answer, go ahead." Balli did not then restate the inquiry as a question. Instead, he moved on and asked him, "Are you aware that I called [the victim and his mother] to wish them a Merry Christmas?" The court sustained the State's objection to the question because it called for facts not in evidence or likely to be presented. Balli then asked him, "So yes or no, you had no knowledge . . . that [the victim and his mother] invited me over on Christmas Day?" The court sustained the State's objection to the question again because it called for facts not in evidence or likely to be presented. Later, Balli went on to ask the grandson, "Are you . . . aware that in my old bedroom . . . that my personal belongings are still in there?" The State objected, and the court sustained the objection

---

[7]        In July 2018, the superior court set a trial date of August 7, 2018. In July 2018, the court vacated that trial date because of the pending Rule 11 evaluation.

[8]        Balli also asserts that the superior court limited his cross-examination of the victim's daughter, but none of the State's objections or the court's rulings related to her testimony.

stating, "Again, I don't know where this line of questioning is going, Mr. Balli. But again, because of . . . a purported lack of discovery to the State on this issue prior to trial, the Court will not allow you to go down this vein." Balli next asked him, "were you aware -- or brought to your attention that your mom [the victim's daughter] and I became executive officers of the estate about three years ago?" The State objected based on relevance, and Balli stated that the relevance of the question was "Foul play." The following exchange then took place:

> THE COURT: . . . And again, so you've been charged with the burglary count and aggravated harassment count. . . . So again, what does this question have to do as far as any[one] being an executor or any kind of probate issues? How does that have anything to do with the charges in the indictment?
>
> [BALLI]: This whole surveillance camera[] is the version, the deception for the master plan of putting everything in their names.
>
> [PROSECUTOR]: Objection, Your Honor.
>
> [BALLI]: I'm taking care of my mom and dad, and they keep me in jail.
>
> . . .
>
> [PROSECUTOR]: Move to strike. And I ask that either we approach the bench and perhaps send the jury out if he wants to make an offer of proof rather than to have him make it here in front of the jury.

The court sent the jury out, and Balli made an offer of proof:

> [BALLI]: [I]t's all about [the victim's daughter]. This interview with this officer here shows it. The police report shows it. Nothing by my parents that any substantial evidence showing that there is foul play. And it's in the police report that -- the original police report and this interview with the police officer here. It's all of a sudden five or six incidents civil, trying to arrest me. In here, I highlighted it. Why are they trying to arrest me? Because I'm a harm to my parents? No. I have a warrant.

They are trying to get me out of the way so they can do their maneuvers. I'm the one that was there. I jumped through the back fence. My . . . mom and I are the victim. My step-dad has dementia, can't really take care of himself. My mom has a form of it too. Up to the last year or so, my mom is declining. But I mean it was 75/35 for years.

That's when I got convicted of resisting arrest. It's about the same stuff. I wasn't able to show myself innocent. I saw a psychiatrist last year. I've seen a psychiatrist this year. And this, it shows -- it's not a laughing matter. I'm not laughing. They're laughing.

[THE COURT]: Who's laughing?

[BALLI]: I've seen the smirk, and in the report says [the victim's daughter]'s laughing. Don't mind the old hag, you know, because she's just out of her mind. It's not a laughing matter. My step-dad's not saying nothing. She's bullying this whole time my step-father. I believe that she feels like she got less than all of the brothers and sisters.

Right now there's been the officers. There's been -- in here it says that the police department -- our family's had the talk of this police department, even with Robin saying he just came back from whatever he's back from, and it's the talk. He wouldn't have known about this situation. But it was the talk of the police department. And it shows [victims daughter].

Even with the next door property, it's as tenant. It's a rental property of ours. Where's the rental property going to? They did not contact -- is it going to [victim's daughter]? It is going to my mom? It's always been one executive officer on their side of the family and one on ours. Now it's both on their side. They're fighting over it. For 11 months they haven't even contacted my mom. Mom's tried. She can't talk. My step dad's not here. How convenient for them too. One's not here. One can't talk. For them to do what they're doing. It says it right here --

[THE COURT]: Okay.

[BALLI]: Get to the point where being sons involved. Her sons haven't been involved except the last couple of incidents

because she's --- now she's got her sons involved. Before it was her all the time.

[THE COURT]: Let me stop you, Mr. Balli. And I will say one thing that the prosecutor said. And I agree a hundred percent with this. You have the right to have a probate trial on that issue. That's where you would argue what you're arguing right now. . . .

All of this stuff about the probate, it's not relevant. It's not relevant . . . in this criminal case. And so no matter what was happening behind the scenes on this whole thing about who gets grandma and grandpa's estate, you're being accused of violating the order of protection and burglarizing the house.

The court then explained that, "The only things . . . you can bring up [are] what you sent to the State as far as discovery . . . so that way no one is surprised or shocked by what's being brought up or what questions are being asked. Okay?" The court found there was "no offer of proof to support [Balli's] questioning . . . regarding any probate or executor issues regarding the grandparents."

¶21        The Sixth Amendment guarantees a criminal defendant the right to confront the State's witnesses. *State v. Carreon*, 210 Ariz. 54, 63, ¶ 36 (2005) (citation omitted). The "essential purpose of confrontation is to secure for the opponent the opportunity for cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974) (citation omitted). "[T]rial judges retain wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The "Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. *Id.* (citation omitted).

¶22        Evidence must be relevant to be admissible. Ariz. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Ariz. R. Evid. 401. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

needlessly presenting cumulative evidence." Ariz. R. Evid. 403. A witness may only testify to matters of personal knowledge. Ariz. R. Evid. 602.

¶23 The issues at trial were limited to whether Balli entered the victim's home with the intent to commit a felony and whether he caused a communication with the victim with the intent to harass, while subject to a valid order of protection. His questions about the victim and his mother's estate would not have made it more or less probable that he committed the charged offenses. Although Balli characterizes the estate matter as a defense, it was an explanation about why Balli thought the order of protection had been obtained rather than a defense to violating that order. Finally, although the court sustained the State's objection to Balli asking one grandson whether he knew if the victim and Balli's mother had invited him over on Christmas day, after Gilleo took over as defense counsel he asked the grandson whether he had knowledge of Balli's mother ever inviting him over "during this period of time," and he replied that he did not. We find no abuse of discretion.

## D. Judicial Bias

¶24 Balli next argues that he was denied a fair trial due to judicial bias because the superior court sustained the State's objections to questions he asked during cross-examination, interrupted him during his offer of proof, and admonished him about representing himself. Balli did not raise judicial bias below or ask the court to recuse itself. He suggests that he is entitled to structural error review, which does not require a defendant to object at the trial level. *See State v. Granados*, 235 Ariz. 321, 324, ¶ 6 (App. 2014). To implicate structural error review of judicial bias, a defendant "must allege a type of bias that would implicate his due process rights, such as bias based on a 'direct, personal, substantial pecuniary interest.'" *Id.* at 325, ¶ 11 (citations omitted). Other types of bias, such as "personal bias or prejudice," do not require structural error review. *Id.* (citations omitted). Balli's complaints about the trial judge on appeal do not implicate structural error review. His allegations of bias are based solely on the court's rulings and admonishment. Because Balli failed to object based on the court's bias below, we review for fundamental, prejudicial error. *See id.* at 326, ¶ 13 (citations omitted).

¶25 "A trial judge is presumed to be free of bias and prejudice." *State v. Hurley*, 197 Ariz. 400, 404, ¶ 24 (App. 2000) (citations omitted). Judicial rulings alone rarely constitute a valid basis for a claim that the superior court was biased. *Granados*, 235 Ariz. at 326, ¶ 14 (citation omitted).

¶26          As discussed *supra* ¶¶ 18–23, the superior court did not abuse its discretion by sustaining the State's objections during cross-examination. And the court's comments to Balli, which were made after the jurors left the courtroom, did not evidence any improper bias. The record reflects that the court listened to Balli's offer of proof, which was long, rambling, and full of irrelevant statements before stopping him and explaining the court's ruling. The court admonished Balli about his self-representation and explained some of the mistakes he had made on the first day of trial (such as trying to make an argument instead of an opening statement and "getting tangled up in the rules and the statutes."). However, Balli has failed to point out any specific comment or action by the court that would show "a hostile feeling or spirit of ill-will." *See State v. Myers*, 117 Ariz. 79, 86 (1977). Because Balli's arguments are without merit, we find no error, fundamental or otherwise.

### E. Motion in Limine

¶27          Balli next argues that the superior court erred by granting the State's motion in limine to preclude him from collaterally attacking the order of protection. We review the court's ruling on a motion in limine for an abuse of discretion. *State v. Gamez*, 227 Ariz. 445, 449, ¶ 25 (App. 2011) (citation omitted). "The decision whether to admit or exclude evidence is left to the sound discretion of the trial court." *State v. Murray*, 162 Ariz. 211, 214 (App. 1989) (citation omitted).

¶28          The State requested the superior court enter a ruling that Balli not be permitted to challenge the validity of the order of protection and "an admonition clearly forbidding [Balli] from blurting out his conspiracy theory." The State was "concerned that [Balli], should he testify, will spontaneously express his view that the Order of Protection should not have been granted." The court heard arguments on the motion in limine on the first day of trial. Balli, who was then representing himself, argued that the order of protection was the result of a "living trust battle." He did not make any legal arguments. The court granted the motion in limine and informed Balli, "You cannot in opening statement bring up the fact that you think that the order of protection was not valid in some way. In closing argument, same thing, you can't bring that up. When you cross-examine witnesses or call your own witnesses, you cannot ask questions about the validity of the order of protection at all."

¶29          A judgment may not be attacked collaterally unless it is void on its face. *Walker v. Davies*, 113 Ariz. 233, 235 (1976) (citation omitted). If the court entering judgment had "(a) jurisdiction of the subject-matter of

the case, (b) jurisdiction of the persons involved in the litigation, and (c) jurisdiction to render the particular judgment given . . . the judgment . . . is not void as against collateral attack" even if it is erroneous or wrong. *Id.*

¶30　　On appeal, Balli acknowledges that "the underlying validity of [the] order may have been irrelevant," but argues that the superior court's ruling prevented him from raising the defenses that he did not enter the victim's home unlawfully, that he lacked the intent to harass, and that the victim's daughter had a motive to lie. However, the court's ruling on the motion in limine merely precluded Balli from challenging the validity of the order of protection. Accordingly, we find no abuse of discretion.

## F. Sufficiency of the Evidence

¶31　　Balli next argues there was insufficient evidence to support his convictions for first-degree burglary and aggravated harassment. We review a claim of insufficient evidence de novo. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011) (citation omitted). We view the evidence in the light most favorable to sustaining the verdict and resolve all reasonable inferences against the defendant. *State v. Greene*, 192 Ariz. 431, 436, ¶ 12 (1998) (citation omitted). We will not disturb the jury's verdict unless no probative facts support it. *State v. Felix*, 237 Ariz. 280, 289, ¶ 30 (App. 2015) (citation omitted). Sufficient evidence may either be direct or circumstantial. *Id.* (citation omitted). "Circumstantial evidence" is "[e]vidence based on inference and not on personal knowledge or observation." *Evidence*, Black's Law Dictionary (11th ed. 2019). The probative value of evidence is not reduced because it is circumstantial. *State v. Blevins*, 128 Ariz. 64, 67 (App. 1981) (citation omitted).

### 1. Aggravated Harassment

¶32　　"A person commits harassment if, with intent to harass or with knowledge that the person is harassing another person, the person . . . causes a communication with another person . . . in a manner that harasses." A.R.S. § 13-2921(A)(1). "A person commits aggravated harassment if the person commits harassment . . . and . . . [a] court has issued an order of protection . . . against the person and in favor of the victim of harassment and the order . . . has been served and is still valid." A.R.S. § 13-2921.01(A)(1). "Harassment" is "conduct that is directed at a specific person and that would cause a reasonable person to be seriously alarmed, annoyed, or harassed and the conduct in fact seriously alarms, annoys, or harasses the person." A.R.S. § 13-2921(E).

¶33        Balli argues there was insufficient evidence that he intended to harass the victim and that there was no evidence that he caused a communication with another in a manner that harassed. We disagree. The evidence showed that the victim had a valid order of protection against Balli. The evidence also established that Balli caused a communication with the victim by entering his residence because in doing so, he caused the victim's grandson to call and advise what he had seen on the security camera footage. The jury could also find Balli's intent to harass from the evidence. Balli entered the residence without knocking, through the back door, early in the morning when the victim was asleep. He did so while carrying a large knife. Balli's behavior frightened the victim and caused him to be "physically and emotionally shaken." And Balli subsequently admitted to his mother that he had "harass[ed]" her "household."

## 2. First Degree Burglary

¶34        "A person commits burglary in the first degree if such person" commits burglary in the second degree "and knowingly possesses explosives, a deadly weapon or a dangerous instrument in the course of committing any theft or any felony." A.R.S. § 13-1508(A). "A person commits burglary in the second degree by entering or remaining unlawfully in or on a residential structure with the intent to commit any theft or any felony therein."[9] A.R.S. § 13-1507(A) (emphasis added). A dangerous instrument is "anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury." A.R.S. § 13-105(12).[10]

¶35        Balli argues that there was insufficient evidence that 1) he entered the victim's home with the intent to commit a felony (aggravated harassment), 2) he communicated or caused a communication in a manner

---

[9]        Aggravated harassment under A.R.S. § 13-2921.01(A)(1) is a class 6 felony. A.R.S. § 13-2921.01(C).

[10]        The superior court instructed the jury that "[t]he crime of burglary in the first degree requires proof of the following: [n]umber 1, the defendant entered or remained unlawfully in or on a residential structure; and number 2, the defendant intended to commit any theft or felony therein; and number 3, at some time between the moment of entry through flight from the scene, the defendant knowingly possessed a dangerous instrument." The court further instructed the jury that "[d]angerous instrument means anything that is readily capable of causing death or serious physical injury under the circumstances in which it is used, attempted to be used, or threatened to be used."

that harassed, and 3) he possessed a dangerous instrument. As discussed *supra* ¶¶ 32–33, there was sufficient evidence that Balli intended to harass the victim and that he caused a harassing communication. The evidence also established that he possessed a dangerous instrument. Even though the knife was not introduced into evidence, the video clips showed Balli holding a large knife while entering and exiting the home. In the postcard he sent his mother, Balli admitted that he had a knife and apologized for harassing her household. Further, Deputy Smith testified that the knife looked like it could cause serious physical injury. The jury was free to disregard Balli's claim in the postcard that he "meant no harm" and only had the knife as protection against wild animals. Accordingly, sufficient evidence supported Balli's conviction for first-degree burglary.

**G. Dangerous Offense**

**¶36**　　　　Balli next argues that the superior court erred by finding that his conviction for first-degree burglary was a dangerous offense because the allegation of dangerousness should have been submitted to the jury. At sentencing, the State argued that count 1 was inherently a dangerous offense because one of the elements of first-degree burglary was the use or possession of a dangerous instrument. Defense counsel conceded, "this is a dangerous offense because of the nature of the charge." He later agreed with the State's and the court's conclusion that count 1 was dangerous. The court found that count 1 was a dangerous offense. Defense counsel did not object to the finding or argue that the jury should have made the finding. Absent an objection, we review the superior court's decision to enhance a defendant's sentence without a jury finding for fundamental error. *State v. Henderson*, 210 Ariz. 561, 568, ¶ 22 (2005). To establish fundamental error, a defendant "must show that the error complained of goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial." *Id.* at ¶ 24.

**¶37**　　　　A.R.S. § 13-704 provides an enhanced sentencing scheme for defendants convicted of dangerous offenses. *State v. McCray*, 218 Ariz. 252, ¶ 19 (2008) (allegation of dangerousness "adds to the underlying offense an element that subjects the defendant to increased penalties."). A dangerous offense requires "the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument." A.R.S. § 13-105(13). First-degree burglary requires a defendant or an accomplice to "knowingly possess[] explosives, a deadly weapon or a dangerous instrument in the course of committing any theft or any felony." A.R.S. § 13-1508(A). Balli's indictment alleged that he "knowingly entered or remained unlawfully in another's residence while armed with a dangerous instrument."

¶38            "Generally, an allegation of dangerousness must be found by a jury. However, a jury need not make a finding of dangerousness where it is 'inherent in the crime.'" *State v. Larin*, 233 Ariz. 202, 212, ¶ 38 (App. 2013) (citations omitted). As the State concedes, first-degree burglary is not an inherently dangerous offense as charged in this case. This is because a defendant may knowingly possess a deadly weapon or dangerous instrument without the discharge, use, or threatening exhibition of it. *Id.* at 213, ¶ 40. The superior court erred by denying Balli the right to have dangerousness decided by a jury beyond a reasonable doubt. The error went to the foundation of Balli's case and was, therefore, fundamental error. *See Henderson*, 210 Ariz. at 568, ¶ 25.

¶39            The State argues that Balli failed to establish any prejudice because "no reasonable juror would have failed to find that the charge involved . . . the 'threatening exhibition of a deadly weapon or dangerous instrument.'" *See* A.R.S. § 13-105(13). We disagree. There was no evidence at trial that Balli threatened the victim with the knife. The only evidence was that he was carrying the knife when he entered and left the house. More importantly, a criminal defendant, not his lawyer, must personally waive a jury-trial right. *See State v. Conroy*, 168 Ariz. 373, 376 (1991) (jury trial waiver is valid only if the defendant is aware of the right and manifests an intentional relinquishment or abandonment of such right). Accordingly, we reverse Balli's sentence for first-degree burglary and remand for further proceedings.

### H. Jury Instructions

¶40            Balli next argues that the superior court erred by failing to instruct the jury on the lesser included offenses of second-degree burglary and criminal trespass. Balli did not object to the final jury instructions. While discussing the final jury instructions with the prosecutor and the court, defense counsel affirmatively told the court not to instruct the jurors on criminal trespass:

> Mr. Gilleo:    Your Honor . . . There's some different court opinions that seem[] to indicate -- which I don't necessarily agree with, but basically a criminal trespass is not a lesser included offense of burglary. And so I don't believe it's probably proper to have it as a lesser included offense. . . . I think there's some case law that suggests that it's not.

¶41 "[E]xpressly requesting the superior court not to give a lesser-included offense instruction amounts to invited error precluding the defendant from arguing on appeal that the instruction should have been given." *State v. Lucero*, 223 Ariz. 129, 136, ¶ 20 (App. 2009) (citation omitted). Because Balli requested the superior court not to instruct the jury that trespass was a lesser-included offense of burglary, he is precluded from raising the issue on appeal.

¶42 Because Balli did not request the superior court instruct the jury on the lesser included offense of second-degree burglary or object to the jury instructions at trial, our review is limited to fundamental error review. *State v. Erivez*, 236 Ariz. 472, 475, ¶ 13 (App. 2015) (citations omitted). Balli must, therefore, establish that fundamental error exists and that he was prejudiced. *Id.* (citations omitted).

¶43 "[I]f the facts of the case as presented at trial are such that a jury could reasonably find that only the elements of a lesser offense have been proved, the defendant is entitled to have the judge instruct the jury on the lesser-included offense." *State v. Wall*, 212 Ariz. 1, 3, ¶ 14 (2006). The difference between first-degree burglary and second-degree burglary is the "knowing[] possess[ion] of explosives, a deadly weapon or a dangerous instrument in the course of committing any theft or any felony." *Compare* A.R.S. § 13-1507(A) *with* A.R.S. § 13-1508(A).

¶44 Balli did not present any evidence to contradict the evidence that he entered the victim's house armed with a knife. As discussed *supra* ¶ 35, the jury saw video clips of Balli entering and exiting the house holding a large knife. Balli admitted having a knife in the postcard he sent to his mother. An instruction on first-degree burglary was the only warranted instruction because no rational juror could conclude that Balli committed the lesser-included offense of second-degree burglary. Because the evidence did not support the lesser-included instruction for second-degree burglary, we find no error in the superior court's failure to *sua sponte* instruct the jury on the lesser-included offense of second-degree burglary, fundamental or otherwise.

## I. Testimony About Booking Photo

¶45 Balli next argues that the admission of a deputy's testimony that he recognized Balli from a booking photo was reversible error. At trial, Deputy Smith testified that he recognized Balli "from a booking photo" when he encountered him in the back yard. Balli did not object to the

testimony, nor request a curative instruction, and there were no additional references to the booking photo at trial.

¶46 Ordinarily, a defendant's failure to object to testimony waives the matter on appeal. *State v. Corrales*, 138 Ariz. 583, 594 (1983) (citation omitted). However, if "the error goes to the foundation of the case or is of such dimensions that it cannot be said it is possible for a defendant to have had a fair trial, the defendant's failure to object does not waive his rights on appeal." *Id.* (internal quotation omitted). Because Balli did not object to the testimony, we review for fundamental, prejudicial error. *State v. Escalante*, 245 Ariz. 135, 138, ¶ 1 (2018). Introducing evidence that a defendant had mug shots taken before the arrest in the case at trial "can be error when [the evidence infers] that the defendant has a prior arrest record." *State v. Kelly*, 111 Ariz. 181, 189 (1974). "[T]o reverse a case, the error must be prejudicial under the facts of the case under consideration." *State v. Ybarra*, 97 Ariz. 200, 202 (1965). There must be a reasonable probability that the verdict might have been different had the error not been committed. *Id.* (citations omitted).

¶47 Balli argues that the reference to his booking photo was an inference of his prior criminal record and so highly prejudicial that his convictions should be reversed. Although the admission of testimony about Balli's booking photo was error, there is no reasonable probability that the verdict might have different without Deputy Smith's single, brief reference to the photo. The evidence was that the victim had a valid order of protection against Balli when he entered the backdoor of the home without knocking early in the morning while the victim was asleep. The jury saw Balli on the video and the large knife he carried, heard testimony that the victim was physically and emotionally shaken after the incident, and read the postcard Balli sent to his mother in which he admitted to having harassed her household and to having the knife.

## J. Presence of Deadly Weapon Aggravator

¶48 Finally, Balli argues that the superior court committed fundamental error by finding the aggravating factor of a deadly weapon or dangerous instrument as to count 1. The State concedes that the court erroneously considered the possession of a deadly weapon in aggravation of count 1 but argues that Balli cannot establish that he was prejudiced. Because we are remanding on the dangerousness issue, we need not decide this claim.

## CONCLUSION

¶49 For the foregoing reasons, we affirm Balli's convictions and his sentence for aggravated harassment but reverse his sentence for first-degree burglary and remand to the superior court for further proceedings.

